ALEXANDER *v.* NEAL.

1. LICENSES—RESIDENTIAL BUILDERS—POLICE POWER.

   The police power may be employed to protect the public from incompetent, inexperienced, and fly-by-night residential building contractors by barring their recovery of compensation for work done while not licensed to engage in such activity (CLS 1956, § 338.986).

2. CONTRACTS—VIOLATION OF POLICE POWER.

   A contract made in violation of a police statute enacted for public protection is void and there can be no recovery thereon.

3. SAME—VIOLATION OF STATUTE.

   One who enters into a contract to perform services or furnish materials in violation of statute which has to do with public health, morals, and safety and contains a penal provision for its violation cannot maintain an action to recover for such services or materials.

4. WORDS AND PHRASES—HOME—PURPOSE OF ACT.

   The term *home,* as used in legislation, has a meaning dependent upon the purpose of the act.

5. LICENSES—RESIDENTIAL BUILDER—ROOF—COMPENSATION.

   Plaintiff who put a new roof on defendants' combination residential and commercial structure without having, at the time of doing so, a license to act as a residential builder or as a residential maintenance and alteration contractor, was properly held not entitled to recover compensation therefor, where licensing statute barred an action for such purpose by an unlicensed person (CLS 1956, §§ 338.972, 338.986).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 33 Am Jur, Licenses §§ 17, 18.
[2, 3] 33 Am Jur, Licenses § 68 *et seq.*
   12 Am Jur, Contracts § 158 *et seq.*
[5] 33 Am Jur, Licenses § 69.
   Failure to procure occupational or business license or permit as affecting validity or enforceability of contract. 30 ALR 834, 42 ALR 1226, 118 ALR 646.

Appeal from Wayne; Fitzgerald (Neal), J. Submitted June 9, 1961. (Docket No. 53, Calendar No. 48,942.) Decided September 23, 1961.

Assumpsit by Robert H. Alexander, doing business as Alexander Roofing Company, against Donald Neal and Henry P. Rosin for roofing repair services. Declaration dismissed at pretrial. Plaintiff appeals. Affirmed.

*Donald G. McHenry,* for plaintiff.

*Henry P. Rosin, in propria persona,* and for defendant Neal.

Talbot Smith, J. This is a matter of statutory interpretation. Our State has a statute "to provide for the licensing and rights of any person to engage in business as a residential builder [defined in section 2] or residential maintenance and alteration contractor [also defined in section 2] in certain counties."[1] The plaintiff is characterized by the trial judge as a "residential contractor" and it is not denied that he had not secured a license to so act. The question in the case is whether, lacking such license, he may maintain an action for the cost of a new roof. The trial court held not. "The plaintiff," it was held, "is clearly a member of the class prohibited from acting without a license. * * * The plaintiff's declaration will therefore be dismissed."

The precise provision of the statute with respect to this phase of the case is as follows:

"No person engaged in the business or acting in the capacity of a residential builder and/or residential maintenance and alteration contractor may bring or maintain any action in any court of this State

---

[1] PA 1953, No 208 (CLS 1956, § 338.971 *et seq.* [Stat Ann 1957 Rev § 18.86(1) *et seq.*]).

for the collection of compensation for the perform-
ance of any act or contract for which a license is
required by this act without alleging and proving
that he was duly licensed under this act at all times
during the performance of such act or contract."[2]

Under the same section of the act, a violator may
be subjected, also, to a criminal penalty:

"shall  *  *  *  be punished by a fine of not to exceed
$500, or by imprisonment in the county jail for a
term of not to exceed 6 months, or by both such fine
and imprisonment in the discretion of the court."[3]

Statutes and municipal ordinances similar in pur-
port to the above are a commonplace in this country.[4]
The police power is thus employed to protect the
public from incompetent, inexperienced, and fly-by-
night contractors.[5]  In the case before us there is no
challenge to the constitutionality of the statute, nor
to the penalty for its violation here involved, namely,
prohibition against action for collection of compen-
sation, a not uncommon provision in such statutes.
Even where the statute contains no such express pro-
hibition, the courts frequently deny recovery on the
ground that "a contract made in violation of a police
statute enacted for public protection is void and
there can be no recovery thereon."[6]  See, also, *Turner
v. Schmidt Brewing Co.,* 278 Mich 464, an action for
work, labor, and materials employed in the execution
of a building contract violative of that portion of
the liquor control act prohibiting a wholesaler from

---

[2] CLS 1956, § 338.986 (Stat Ann 1957 Rev § 18.86 [16]).

[3] *Ibid.*

[4] *E. g.,* Deering's Cal. Codes, Business and Professions, § 7026 *et
seq.*; 9 McQuillin, Municipal Corporations (3d ed, 1950), § 26.109.

[5] For results of defective and improperly installed plumbing see
The Outbreak of Amebiasis in Chicago During 1933, by Drs. Bundesen,
Tonney, and Rawlings, 102 Journal American Medical Association
part 1, p 369 (1934).

[6] *F. S. Bowen Electric Co.* v. *Foley* (1952), 194 Va 92, 100 (72
SE2d 388, 393).

assisting other vendors financially, wherein we held (syllabus):

"One who enters into a contract to perform services or furnish materials in violation of statute which has to do with public health, morals and safety and contains a penal provision for its violation cannot maintain an action to recover for such services or materials."

Here the attack made by appellant may best, perhaps, be expressed in his own statement of the 3 questions he asserts are involved:

"1. Are defendants, the owners of a 26-unit apartment house with 5 stores on the ground floor, entitled to dismissal of a suit for cost of a new roof on the sole ground that PA 1953, No 208 (CLS 1956 § 338.971 *et seq.* [Stat Ann 1957 Rev § 18.86(1) *et seq.*]), applies in regard to requiring the roofer to have a residential builder and/or maintenance and alteration contractor's license, where admittedly no such license is required if it be commercial property?"

"2. Where the trial court dismissed the suit on pretrial and denied a rehearing motion, and no facts were alleged in contravention of plaintiff's reply setting forth the property was a 30-unit commercial apartment with 5 stores held by 'absentee landlords as commercial investment property and not as residential property,' should, as a matter of law, judgment have been given for defendants, where it was agreed on pretrial this was the only question?"

"3. As a matter of law, on the above facts, should judgment be given for plaintiff?"

Disregarding the argumentative matter in the questions put, which should under our rules[7] be reserved for that portion of the brief devoted to "Argument", his propositions, as expressed here and else-

[7] Court Rule No 67, § 3 (1945), as last amended, 355 Mich xiv.

where, reduce to this: The apartment house in question is not a "home", and since the purpose of the legislation is said to be to protect only the owners of "homesteads" or "personal residences" it has no application to the activities of the contractor before us when he worked on a combination residential and commercial structure. In support of this theory appellant cites various dictionary definitions of the word "home", none of which seems conclusive, since such terms as "the place where one resides", "one's dwelling place", or "the habitual abode of one's family", are generally as applicable to apartments as to homesteads. Moreover, as reference to any standard digest will disclose, the word home, as used in legislation, has many meanings, depending upon the purpose of the act. Thus it may refer "to a particular spot, or to a whole country",[8] to residence or domicile,[9] or, indeed, to a place of business, sometimes described as a "tourist" home. In the act here under consideration the meaning is made clear by the definitions contained in the act itself. The "residential builder" to whom the act refers in its protection of "home" owners is one who is engaged in the construction of either "residential structures or a combination of residential and commercial structures."[10] The "residential maintenance and alteration contractor" is similarly defined as one who undertakes to repair "a residential structure or combination of residential and commercial structure."[11] Thus it is clear from the definitions employed in the act itself that the "home owners" here sought to be protected are not simply the owners of

8 *Langhammer* v. *Munter* (1895), 80 Md 518, 526 (31 A 300, 301, 27 LRA 330).

9 *In re Mullins* (1946), 26 Wash2d 419, 444 (174 P2d 790, 804).

10 CLS 1956, § 338.972, subd (b) (Stat Ann 1957 Rev § 18.86[2], subd [b]).

11 CLS 1956, § 338.972, subd (c) (Stat Ann 1957 Rev § 18.86[2], subd [c]).

the traditional vine-covered cottages, but comprehend, as well, the owners of today's combined residential and commercial structures.

We find no error. Judgment affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.